UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA COYKENDALL,

    Plaintiff,

v().                                                                            CASE NO. 8:19-CV-2567-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**<u>ORDER</u>**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. § 405(g). Plaintiff argues the administrative law judge (ALJ) failed to properly weigh the medical opinions, accurately assess the severity of his mental impairments, and consider the testimony of his wife and his vocational rehabilitation specialist. Plaintiff also contends the consultative examination the ALJ ordered after Plaintiff's first administrative hearing was unconstitutional. After considering the parties' arguments and the administrative record (docs. 12, 16), I find the Commissioner's decision is supported by substantial evidence. I affirm.

    A.    *Background*

Plaintiff Joshua Coykendall was born on August 29, 1976, and was 38 years old on his alleged onset date of July 28, 2015 (42 years old on the date of the ALJ's decision). (R. 26) He alleges disabling back, neck, knee, lumbar, and trapezius pain due to ankylosing spondylitis (AS)

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

1

as well as depression and anxiety.  Plaintiff's date of last insured (DLI) is March 31, 2021; he must show he became disabled by this date to receive benefits. (R. 17)

Plaintiff has a business management undergraduate degree and worked in a supervisory position as a banker, a commercial asset manager, and a mortgage loan officer at various companies until his onset date. (R. 72-75)  He testified he worked through intense pain ever since his diagnosis of AS at the age of 30, until he finally "hit a wall" in July 2015 and took a medical leave of absence from work. (R. 75)  He tried epidural injections, nerve runs, and "so many different things over the years." (*Id*.)  He "was in so much pain and so [he] was – [he] went to see a couple of neurologists and a couple of them said you need to be fused from S1 to L3 and the last guy [he] saw said, you know what, we have a new surgery and we can go in through your abdomen." (*Id*.)  He had S1-L3 fusion surgery in October 2015. (R. 76)  After the surgery, an MRI "showed facet arthropathy with annular fissure in the central zone with . . . mild to moderate stenosis." (*Id*.)  He also had surgery in 2016 to remove 14 lipomas in his neck. (R. 77)

Plaintiff is married with two young children. (R. 71)  He testified he can stand and walk for approximately 15 minutes at a time "or maybe a bit longer before it increases the pain and I need to be back on ice and then I need to recover.  I'm constantly on ice wherever I go.  I am sitting on ice right now as we speak." (R. 81-82)  Ice helps relieve his pain, and he also takes oxycodone, morphine, and tizanidine (for muscle spasms), among other medications. (R. 79-81)  He testified he never leaves his house without ice and sometimes has to lie down in his SUV if he is out somewhere with his kids and stands for too long.  He estimates he lies flat on his back 50% of his waking hours. (R. 81)  He needs help getting dressed and undressed and has diminished cognitive functioning due to side effects from his medications, as well as depression and anxiety. (R. 82, 86)

After Plaintiff's first hearing, the ALJ ordered a consultative examination, performed by internist Yemi Owi, M.D. on June 25, 2018. (R. 2915-2927)  Afterwards, Plaintiff requested a supplemental hearing and submitted an assessment by his own vocational rehabilitation specialist, Jeannine Salek; a letter from his representative summarizing his treatment and limitations; and additional medical records (R. 406-25).  The ALJ incorporated this evidence into the record and held a second hearing on September 25, 2018. (R. 42-61)

The ALJ issued his decision on October 10, 2018 (R. 15-27), finding that Plaintiff had not performed substantial gainful activity since July 28, 2015 (his alleged onset date).  The ALJ identified Plaintiff's severe impairments as "History of Recurrent Lipomas, Chronic Sinusitis with History of Respiratory Infections, Status Post-Anterior Lumbar Interbody Fusion, Degenerative Disc Disease, Ankylosing Spondylitis, Lumber Radiculopathy, Hypertension, Status Post-Hypertensive Transient Ischemic Attack ("TIA"), and Cervical Spine and Shoulder Disorders." (R. 17)  Despite these impairments, the ALJ found Plaintiff is not disabled because he maintains the residual functional capacity (RFC) to perform sedentary work.  Specifically, he can:

> lift 20 pounds occasionally and up to 10 pounds frequently.  However, he can stand and walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal and customary breaks (i.e., he can perform work activity in increments of 2 hours separated by a morning break, an afternoon break, and a 30-minute lunch break).  He must avoid operating foot controls and avoid climbing ladders, ropes, and scaffolds.  He can occasionally climb ramps, or a stair, but he can frequently balance and occasionally stoop, kneel, crouch, and crawl.  He can frequently reach but is limited to performing overhead reaching occasionally.  He can frequently handle, should avoid concentrated exposure to extreme cold and excessive vibration, and must avoid all industrial hazards, defined as the use of hazardous industrial machinery and unprotected heights.  Further, the claimant can work in a position where he can alternate sitting and standing nearly at-will (i.e., after 20 minutes of sitting he will need an option to stand for 1-3 minutes, but will not be off-task 10% or more of a typical day by doing so).

(R. 19)  In his decision, the ALJ found that, with this RFC, Plaintiff could not perform his past work but could work as an administrative clerk or an administrative assistant. (R. 27)  Plaintiff

appealed the ALJ's decision to the Appeals Council (AC), which denied review. (R. 2) His administrative remedies exhausted, Plaintiff filed this action.

  *B.*  *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    Discussion

    1.    *Lay witness and "other source" testimony*

Plaintiff argues the ALJ erred because he did not discuss either Plaintiff's wife's statements (made to Earl Teller, Ph.D. during a April 2, 2018 psychological evaluation) that Plaintiff's struggles with anxiety and depression impact his daily life (R. 2896-2897) or the opinion of Ms. Salek, who opined in March 2018 that Plaintiff does not have the RFC to perform even sedentary work. (R. 411)  The Commissioner acknowledges that the ALJ's decision does not reference these sources but contends this omission is, at most, harmless error. I agree with the Commissioner.

Regarding Plaintiff's wife's statements, under the regulations in effect when Plaintiff filed his claim, third-party testimony by a lay person is considered "other source" testimony. 20 C.F.R. § 404.1513. This evidence may be used in addressing the nature and severity of an impairment.

5

*Id*.  In evaluating the evidence, the ALJ should consider whether the evidence is consistent with the other evidence in the case, the nature and extent of the claimant's relationship to a witness, and any other factors that tend to support or refute the evidence.  SSR 06-3p.[2]  According to the Eleventh Circuit:

> The testimony of family members is evidence of a claimant's subjective feeling of pain.  *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony.  *Id*. at 1254-55 (citing *Allen v. Schweiker*, 642 F.2d 799 (5th Cir. 1981)).

*Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006); *see also Williams v. Saul*, No. 5:18-cv-158-MJF, 2019 WL 4280055, at *16 (N.D. Fla. Sept. 9, 2019).  And, of course, the ALJ does not need to discuss every piece of evidence, so long as he considered Plaintiff's medical condition as a whole.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Plaintiff's wife attended his April 2018 consultative psychological evaluation with Dr. Teller and offered her observations of Plaintiff's symptoms and how they impact his life, which Dr. Teller referenced in his report.  For example, Dr. Teller wrote:  "According to Mr. Coykendall and his wife Raequel, he has been experiencing numerous symptoms of both depression and anxiety over the past several years." (R. 2896)  And, "[a]ccording to Raequel, who is a school teacher, his functioning has deteriorated significantly, especially over the last five years." (*Id*.)

---

[2]  The SSA rescinded SSR 06-03p for claims filed *after* March 27, 2017 (Plaintiff filed his claim on September 24, 2015). *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (Mar. 27, 2017).  In any event, the Court is bound by Eleventh Circuit precedent even in the face of new regulations. *See Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007) (Eleventh Circuit precedent that a VE's testimony trumps an inconsistent DOT provision prevails over a later-published social security ruling to the contrary).

The ALJ did not reference Plaintiff's wife's statements directly, but he did consider Dr. Teller's evaluation and assign it "little weight." (R. 25)  Dr. Teller opined that Plaintiff had a collection of moderate, marked, and extreme limitations in mental functioning and, as a result, would miss more than four days of work a month. (R. 2898)  The ALJ discounted this opinion because it "does not find support in Dr. Teller's findings or in the prior psychotherapy records of the claimant."   The ALJ cited the progress notes of Susan Phillips, Ph.D., Plaintiff's psychotherapist who treated him weekly from June 2016 through the end of 2017. (R. 25) Interestingly, Plaintiff does not challenge the ALJ's consideration of either Dr. Teller's or Dr. Phillips's opinions.  By discounting Dr. Teller's report, I find the ALJ implicitly rejected Plaintiff's wife's testimony, which was largely duplicative of Plaintiff's testimony; the ALJ did not err in this respect.  *See Osborn*, 194 F. App'x at 666.

Next, Plaintiff argues the ALJ erred because he omitted mention of Ms. Salek's opinion. Ms. Salek is a vocational rehabilitation specialist who met with Plaintiff after his first administrative hearing and issued a report summarizing Plaintiff's medical and vocational history and concluding he is incapable of even sedentary work.  Plaintiff's argument fails for two reasons. First, Ms. Salek opined on Plaintiff's RFC, a legal issue reserved for the ALJ.  *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also* 20 C.F.R. § 404.1546(c).  Ms. Salek's role as a vocational resource is not to formulate a claimant's RFC (an administrative determination) but to opine on a claimant's ability to work within the context of an RFC formulated by an ALJ, based on the ALJ's consideration of a claimant's medical records and other evidence. Second, like Plaintiff's wife, Ms. Salek is an "other source" under the regulations applicable when Plaintiff filed his claim.  Her opinion is not entitled to any deference, and the ALJ did not need to articulate specific reasons for rejecting it.  *See* 20 C.F.R. §§ 404.1502; 404.1513(a), (d);

7

404.1527(a)(2). Indeed, the ALJ's rejection can be an implicit one. *See Osborn*, 194 F. App'x at 666.

In reaching his decision that there are sedentary jobs in the national economy a person with Plaintiff's RFC can perform, the ALJ consulted a VE during both administrative hearings. (R. 57-59, 91-103) Plaintiff does not challenge either the VE's testimony, the ALJ's reliance on it, or the ALJ's RFC determination. Neither does Plaintiff point me to any specific evidence supporting Ms. Salek's opinion, opting instead for the bare bones argument that her findings are "clearly probative." (Doc. 16 at 14). Under these circumstances, I find the ALJ's failure to mention Ms. Salek's opinion was harmless error. *See Iordan v. Comm'r of Soc. Sec.*, 579 F. App'x 775, 779 (11th Cir. 2014) ("[r]emand is unnecessary when it would amount to a waste of judicial resources in the face of an ample record"); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (courts should decline "to remand for express findings when doing so would be a wasteful exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (internal quotation marks omitted). Plaintiff's first argument is unavailing.

   2.   *Severity of Mental Impairments*

Next, Plaintiff argues the ALJ erred in considering his depression, anxiety, and ADD/ADHD to be non-severe impairments at step two of the sequential evaluation process. I disagree. Plaintiff's emphasis on step two is somewhat misguided.[1] Step two requires only that

---

[1] The Eleventh Circuit has held that "a claimant's impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

the ALJ determine whether Plaintiff suffers from at least one severe impairment. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 385 F. App'x 823, 825 (11th Cir. 2010) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

At step two the ALJ found Plaintiff suffers from the severe impairments of recurrent lipomas, chronic sinusitis, status post-anterior lumbar interbody fusion, degenerative disc disease, AS, lumbar radiculopathy, hypertension, status post-hypertensive TIA, and cervical spine and shoulder disorders. (R. 17)  In reaching this finding, the ALJ considered Plaintiff's other impairments and concluded:  Plaintiff's "anxiety, depression, and ADD/ADHD, considered singly and in combination, do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and, therefore, are non-severe." (R. 18)  This satisfies the step two inquiry and constitutes substantial evidence that the ALJ considered the combined impacts of a claimant's impairments. *Wilson v. Barnhart*, 284 F.3d at 1223.

Plaintiff appears to conflate the ALJ's duty at step two to evaluate Plaintiff's severity of impairments with his duties and steps four and five.  At steps two and three, the ALJ employs a special technique for evaluating mental impairments (called the Psychiatric Review Technique, or PRT) to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3); *see Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).  The ALJ incorporates the results of the PRT into his findings and

conclusions at steps four and five of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Plaintiff makes only vague and conclusory arguments that the ALJ erred at step two; Plaintiff does not cite to any specific evidence contained in the almost 3,000-page administrative record to support his contention that the ALJ failed in assessing his mental impairments. Instead, Plaintiff avers, "[i]t is impossible to determine how the ALJ came to the conclusion that Mr. Coykendall's mental impairments were no more than mild." (Doc. 16 at 27). And, "the ALJ does not explain how an inability to perform serial sevens does not cause more than minimal limitations." (*Id.*) This evinces a fundamental misunderstanding of the ALJ's step two burden, explained above.

In his application for benefits, Plaintiff did not allege disability based on mental impairments, but at the administrative denial and reconsideration stages, state agency psychologists opined Plaintiff's mental impairments were non-severe. (R. 109-110, 124-25, 267) The ALJ then employed the PRT, considering each of the four areas of mental functioning based on the relevant evidence available to him (R. 18) and found at step two that Plaintiff's mental impairments were non-severe. The ALJ incorporated Plaintiff's PRT into his findings at steps four and five. I agree with the Commissioner that the ALJ fulfilled his step two burden. Plaintiff's second argument fails.

### 3. *Constitutional Issues*

Next, Plaintiff argues the Commissioner's decision is unconstitutional because it was arbitrary and capricious for the ALJ to order a consultative examination after Plaintiff's first administrative hearing. The Commissioner counters that the ALJ exercised his discretion to order the consultative examination in accordance with 20 C.F.R. § 404.1519a(b), which permits an ALJ to order a consultative examination when the evidence in the record is insufficient for ALJ to make a determination. I agree with the Commissioner.

Plaintiff argues, "[i]n this case, the post-hearing CE was unnecessary. Therefore, it violates the Constitutional Principles of Fair Process. An additional opinion would not have clarified the record. Rather, it would seem that the only real value it could provide would be to potentially damage the claimant's already well-developed case." (Doc. 16 at 32). Plaintiff states that the post-hearing CE conducted by Dr. Owi is "the only examining source opinion that the ALJ gave 'some weight,' whereas the ALJ gave little weight to all other examining physician opinions." (*Id*.) Plaintiff's argument then takes a turn: despite arguing Dr. Owi's CE was unnecessary, Plaintiff contends the ALJ was constitutionally bound to develop the record even more by ordering a second CE, because he assigned Dr. Owi's opinion less than full weight.

Plaintiff cites *Gonzales v. United States*, 348 U.S. 407 (1955), *Withrow v. Larkin*, 421 U.S. 35 (1975), and *Douglas v. Shinseki*, 23 Vet. App. 19, 24 (U.S. Ct. App. Vet. Cl. 2009), which stand for the indisputable principle that a fair trial before a fair tribunal is a basic due process requirement applicable to administrative proceedings. Plaintiff does not explain how these cases undermine the ALJ's decision, and he admits that he "has found no such cases directly dealing with scheduling an arbitrary and capricious post-hearing CE in a claim for Social Security disability benefits[.]" (Doc. 16 at 31-32). To be sure, an ALJ has a basic obligation to develop a full and fair record.

11

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015); *cf. Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (ALJ has duty to develop the record where appropriate but is not required to order a CE if the record contains sufficient evidence for the ALJ to make an informed decision). This is an "onerous task" as the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." *Henry*, 802 F.3d at 1267 (citation and internal quotation marks omitted). Here, the ALJ determined that a CE was necessary to create a full and fair record, in accordance with 20 C.F.R. § 404.1519a, and Plaintiff offers no support for his contention that this decision was unconstitutional. Instead, Plaintiff's due process concerns appear to be an attempt to repackage the argument that the ALJ cherry-picked evidence in denying his claim. I address this in the next section regarding the weight the ALJ assigned to different medical opinions. But to frame this argument in context of due process principles is baseless.

    4.    *Weight of medical opinions*

Finally, again without pinpointing any specific medical evidence in the almost 3,000-page administrative record, Plaintiff contends "[t]he ALJ erred by improperly weighing the medical opinions, giving more weight to non-examining physicians and limited [to] no weight to numerous examining physicians including treating physicians, whose opinions were all consistent with one another." (Doc. 16 at 19). The Commissioner retorts that Plaintiff's general reference to medical evidence contrary to the ALJ's findings is not enough to "extinguish the substantial evidence supporting" them (*Id*. at 22). I agree with the Commissioner.

The method for weighing medical opinions under the Social Security Act is in the regulations at 20 C.F.R. § 404.1527(c).[3] Relevant here, the opinions of examining physicians are

---

[3] This section was rescinded on March 27, 2017, but still applies to claims filed before this date. Plaintiff filed his claim on September 24, 2015. (R. 15) For claims filed after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

12

generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations in effect at the time Plaintiff filed his claim, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 404.1527(c)(2). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips*, 357 F.3d at 1240 n.8). And the ALJ must state the weight given to different medical opinions and why. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ considers many factors when weighing a medical opinion. *See* 20 C.F.R. § 404.1527(c). For instance, the regulations applicable to Plaintiff's claim command that the ALJ consider (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization. *Id*. Non-examining physicians' opinions are entitled to little weight when

13

they contradict the opinions of examining physicians and do not alone constitute substantial evidence. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019).

Here, Plaintiff appears to argue the ALJ should have credited doctors' opinions that Plaintiff "would be required to lie down and that he would spend a certain percentage of his workday off-task and that he would be absent more than three times if he tried to work. Plaintiff found no substantial evidence in the file that specifically refuted these opinions in regard to lying down, off-task behavior, or absences." (Doc. 16 at 20). Because there is no medical evidence that specifically refutes these (unnamed) doctors' findings – Plaintiff's argument goes – the ALJ's decision must not be based on substantial evidence. He doubles down on this argument: "No doctor stated that [Plaintiff] would *not* need to lie down or that he would *not* be off-task or that he would *not* be absent due to his impairments." (*Id.*) (emphasis added)

Plaintiff's conclusory, two-page argument cites no record evidence, which reflects poorly on its strength. Although Plaintiff contends the ALJ erred in weighing the opinions of his treating and examining sources, Plaintiff does not specify which doctor's records he is referring to or where to find them in the record. I will not do this work for him. *Cf. Buttram v. Comm'r of Soc. Sec.*, 594 F. App'x 569, 572 (11th Cir. 2014) ("Nor will we consider an issue raised only in passing or in a way that eschews legal argument or authority."). The issue is not whether evidence refuting treating and examining source opinions exists but whether the ALJ properly rejected these opinions based on his review of the record as a whole. *See Phillips*, 357 F.3d at 1241. It is the ALJ's duty to resolve conflicts in the evidence; Plaintiff's vague reference to evidence contrary to the ALJ's finding does not convince me the ALJ's decision is unsupported by substantial evidence.

The ALJ found that Plaintiff was limited to sedentary work with postural and environmental limitations and a sit-stand option. (R. 19) In rejecting Plaintiff's testimony that he

14

must lie down 50% of the time, the ALJ stated: "None of the treatment notes or numerous opinions of record support such a limitation." (R. 23) Substantial evidence supports this finding. Plaintiff's treating physician Maulik Bhalani, M.D. (a pain management doctor) opined in March 2016, that Plaintiff would need to lie down at unpredictable intervals during a workday. (R. 580-81) Treating physician Belen Herrero, M.D., in December 2016, opined that Plaintiff cannot stand, walk, or sit for more than four hours per day and would need to lie down during the workday. (R. 1019) And one-time examiner Robert Guirguis opined in April 2018, that Plaintiff is "fully and permanently disabled," would be off task more than 20% of a workday, and would need to lie down for more than an hour per day. (R. 2908) But none of the sources claimed Plaintiff must lie down 50% of the time. And, the ALJ discounted each of these opinions as inconsistent with the evidence. (R. 24-25)

For example, in January 2016, Dr. Bhalani noted Plaintiff was doing well on his medication, was weaning off of morphine, and was in no acute distress. (R. 21, 519) That same month he reported to his physical therapist that he was a little sore after walking and scootering around Universal Studios over the weekend with his family. (R. 2351) He was making progress in physical therapy and could walk up and down steps with a normal gait. (R. 21, 2352) Regarding Dr. Herrero, the same month she opined Plaintiff would need to lie down during work (R. 1019-1020), Plaintiff reported he was pleased with his physical therapy and that it had helped him a lot, and he was going to the gym. (R. 24, 673, 726, 736) He reported good exercise habits and that his medications were lessening his pain. (*Id.*) Plaintiff's challenge to the ALJ's decision to discount these sources is both perfunctory and without citation to supporting evidence. Under these circumstances, the ALJ did not err.

15

...

...

D.     *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED.

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on March 22, 2021.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE